IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Criminal No. 3:04-CR-059-D |
| VS. | § | |
| | § | |
| EDWIN T. McBIRNEY, III, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Following his convictions by a jury on multiple counts of mail fraud, making a false statement in a matter within the jurisdiction of the Judicial Branch of the United States, and concealment of assets from the Federal Deposit Insurance Corporation ("FDIC"), and one count of money laundering, defendant Edwin T. McBirney III ("McBirney") moves for arrest of judgment, for judgment of acquittal notwithstanding the verdict, or for a new trial.[1] Except for counts 13 and 22, as to which the court grants the motion and supplemental motion for judgment of acquittal notwithstanding the verdict, the court denies the motions.

---

[1]The motions to be decided are McBirney's February 3, 2006 motion for arrest of judgment, February 3, 2006 motion for judgment of acquittal notwithstanding the verdict or in the alternative motion for new trial, May 4, 2006 supplemental motion for judgment of acquittal notwithstanding the verdict or in the alternative motion for new trial, and May 4, 2006 supplemental motion for arrest of judgment. Briefing on the motions concluded July 13, 2006.

I

Before Sunbelt Savings Association of Texas ("Sunbelt") failed, McBirney was its Chief Executive Officer.  In civil and criminal cases related to Sunbelt's demise, McBirney was ordered to make certain payments to the FDIC, as Sunbelt's receiver.  Pursuant to a settlement agreement in the civil case, *Federal Deposit Insurance Corp. v. McBirney*, No. 3:89-CV-2295-X (N.D. Tex.), the FDIC obtained a judgment against McBirney for $8.5 million plus interest.  In the criminal case, *United States v. McBirney*, No. 3:90-CR-171-T (N.D. Tex.), McBirney pleaded guilty to four felony counts, including bank fraud.  The court sentenced McBirney to 15 years' imprisonment and ordered him to pay $7.5 million in restitution.  The criminal judgment provided that payments made on the civil judgment would be credited against the restitution obligation.  The court later reduced McBirney's sentence to five years' imprisonment and five years' probation.

In the present case, the grand jury handed up a 27-count superseding indictment ("indictment") that charged McBirney with multiple counts of mail fraud, making a false statement in a matter within the jurisdiction of the Judicial Branch of the United States, and concealment of assets from the FDIC, and one count of money laundering.[2]  The government alleged that McBirney had concealed his assets in a spendthrift trust—the Oslin Nation 1993

---

[2]The indictment also included forfeiture allegations.

Trust ("ONT")——that was actually an artifice to defraud the FDIC.

The ONT was created on September 10, 1993.  According to the terms of the trust, Oslin Nation ("Nation") was the settlor, Pamela Stewart ("Stewart") was the initial trustee, and McBirney was the beneficiary.[3]  At the time the ONT was created, McBirney and Stewart were involved in a personal relationship.  Dan Jackson ("Jackson") later replaced Stewart as trustee.  The ONT contained a spendthrift provision that purported to protect the trust estate from being reached by McBirney's creditors and to prevent McBirney from anticipating or assigning his interest in the trust estate. The ONT was initially funded with four investments that the trust document stated Nation had transferred to the trust.  The government maintained that the ONT was a sham trust, the initial trust assets and subsequent investments were McBirney's assets that were transferred to the trust, McBirney exercised control over the trust and in essence used it as his personal account, and McBirney put his own assets into the purported spendthrift trust to conceal them and to defraud the FDIC.

The indictment charged that McBirney devised a scheme and artifice to defraud the FDIC concerning its right to payment under the criminal restitution order and the civil judgment.  The grand jury alleged that McBirney used the ONT as his alter ego to conduct

---

[3]One provision in the ONT also permitted the trustee, with McBirney's consent, to distribute any part of the trust estate to or for the benefit of Roland Freeman.

his business and pay his personal expenses, and that he fraudulently concealed his income by causing it to be paid to the ONT rather than to him.

Counts 1 through 6 charged McBirney with mail fraud, in violation of 18 U.S.C. § 1341, and alleged that, for the purpose of executing the scheme and artifice, he knowingly caused to be delivered to the United States Probation Office by United States mail six separate Probation Office Monthly Supervision Reports ("Reports"). Counts 7 through 15 charged McBirney with making a false statement in a matter within the jurisdiction of the Judicial Branch of the United States, in violation of 18 U.S.C. § 1001(a). These counts alleged that McBirney knowingly and willfully made false, fraudulent, and fictitious material statements and representations in nine separate Reports by significantly understating his actual monthly income. Counts 16 through 24 charged McBirney with concealment of assets from the FDIC, in violation of 18 U.S.C. § 1032(1). These counts alleged that McBirney violated § 1032(1) by knowingly understating his income on the same nine Reports alleged in counts 7 through 15. Count 25 charged McBirney with making a false statement in a matter within the jurisdiction of the Judicial Branch of the United States, in violation of 18 U.S.C. § 1001(a), by denying on a personal financial statement submitted to the Probation Office that he received or expected to receive benefits from any established

trust.   Count 26 charged McBirney with violating § 1001(a) by falsely stating in a net worth statement submitted to the Probation Office that he did not have any control over the ONT.   And count 27 charged McBirney with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i), by causing Jackson, the trustee, to write 248 checks from the ONT bank account for payment of McBirney's personal expenses.[4]

II

A

McBirney moves for a judgment of acquittal on the mail fraud counts (counts 1 through 6) on the ground that a reasonable jury could not have found beyond a reasonable doubt that he devised a scheme to defraud the FDIC.   He maintains (1) the ONT was a valid Texas spendthrift trust, (2) the ONT was not a self-settled trust, (3) later assets transferred to the ONT were transferred appropriately, and (4) there was nothing illegal or improper about the operation and/or control of the ONT.

The government responds that the evidence is sufficient to support the verdict because (1) the ONT was created for a fraudulent purpose and was McBirney's alter ego, (2) the ONT was a self-settled trust under Texas law, and (3) McBirney transferred later assets to the ONT without consideration.

---

[4]Count 27 also charged McBirney with committing this offense as an aider and abettor, under 18 U.S.C. § 2.

- 5 -

"To establish mail fraud, the government must show beyond a reasonable doubt 'that the defendant (1) used a scheme to defraud, (2) which involved a use of the mails, and (3) that the mails were used for the purpose of executing the scheme.'" *United States v. Reyes*, 239 F.3d 722, 735 (5th Cir. 2001) (quoting *United States v. Sneed*, 63 F.3d 381, 385 n.3 (5th Cir. 1995)). McBirney does not challenge the sufficiency of the evidence as to the second and third elements; he contests his mail fraud convictions solely on the ground that a reasonable jury could not have found that he devised a scheme to defraud the FDIC. "The first element . . . requires that the government prove fraudulent activity and 'that the defendant had a conscious knowing intent to defraud.'" *Id.* at 736 (quoting *United States v. Krenning*, 93 F.3d 1257, 1264 (5th Cir. 1996)).

"Th[e] court reviews a defendant's claim of insufficient evidence to determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Infante*, 404 F.3d 376, 384 (5th Cir. 2005) (quoting *United States v. Bellew*, 369 F.3d 450, 452 (5th Cir. 2004)). "In applying this standard, [the court] must 'accept all reasonable inferences [that] tend to support the jury's verdict.'" *Id.* (second alteration in original) (quoting *United States v. McDow*, 27 F.3d 132, 135 (5th Cir. 1994)). "The evidence

need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *Id.* at 384-85 (quoting *United States v. Dadi*, 235 F.3d 945, 949-50 (5th Cir. 2000)).

B

McBirney first contends that the ONT was a valid Texas spendthrift trust. To support his argument, he relies heavily on the testimony of Duncan E. Osborne, Esquire ("Osborne"), the government's expert witness. Osborne testified that "The trust on its face is valid. There's not anything on the face of the document that would suggest that it's illegal or invalid or inappropriate." Tr. 5:86. Osborne also testified that the spendthrift provision appeared facially to prevent McBirney's access to or anticipation of the trust assets. McBirney also points to the testimony of Michael E. Miller, Esquire ("Miller"), the attorney who represented Stewart and prepared the trust documents. Miller testified that the ONT met the legal prerequisites of a valid spendthrift trust and that it was his understanding that Nation's assets were going into the trust.

Second, McBirney argues that the ONT was not a self-settled trust. Under Texas's self-settled trust rule, a spendthrift provision does not operate to protect trust assets from creditors when the beneficiary is the one who places the assets into

- 7 -

trust—i.e., the grantor and beneficiary are the same person. *See* Tex. Prop. Code Ann. § 112.035(d) (Vernon 1995 & Supp. 2006) ("If the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest does not prevent his creditors from satisfying claims from his interest in the trust estate."). McBirney asserts that the ONT was not a self-settled trust because Nation transferred each of the four initial assets into the trust. Nation transferred these assets to the trust, however, subject to promissory notes from the trust back to himself. McBirney points to Osborne's testimony that there was nothing inherently unlawful or improper about Nation's putting assets in the trust, subject to promissory notes. Moreover, McBirney posits that the ONT complied with Nation's wishes in that Nation had known McBirney for over 20 years and thought of him as a "second son." Furthermore, after learning about the ONT and receiving copies of the trust documents in December 1998, the government failed to interview Nation before his death in February 2000 concerning the circumstances surrounding the ONT.

Third, McBirney asserts that later assets transferred to the ONT were properly conveyed. In 1994 McBirney, as President of Tangent Corporation ("Tangent"), transferred to the ONT Tangent's interest in a Certificate of Accrual on Treasury Securities ("CATS"), valued at $310,000. In the 1980s McBirney had

transferred his majority ownership of Tangent from himself to his father, although he remained the President. McBirney maintains that these transactions were lawful, and he disputes the government's theory that he transferred ownership of Tangent to his father because he learned he was under investigation for his activities related to Sunbelt, that the transfer was only nominal because he maintained control over Tangent, and that the transfer of CATS to the ONT was a transfer of his own asset. McBirney also asserts that the transfer of two other assets——an option to buy an interest in a condominium and the ONT's purchase of the residence in which McBirney lived rent-free——was proper and lawful.

Fourth, McBirney maintains that the conveyance to the ONT of his 5% general partnership interest in McBirney 544 Joint Venture ("544 JV") was proper and lawful. 544 JV owned 134 acres of land in Collin County, Texas. On his bankruptcy schedules, McBirney valued his 5% interest at $125,000, subject to $289,620 in debt. After the bankruptcy trustee abandoned the interest in 544 JV, McBirney sold it to the ONT for $10. After the sale of the land, the ONT later received from 544 JV distributions in excess of $212,030. McBirney contends that nothing was improper about the conveyance of his interest in 544 JV to the ONT because $10 was fair market value considering that the land had more debt than it was worth and because the government knew about but did not object to the conveyance before it occurred.

Fifth, McBirney contends there was nothing illegal or improper about the operation and control of the ONT. He asserts that he was in prison during Stewart's entire tenure as trustee, he had no authority to do anything regarding the ONT, Stewart conducted the ONT's business, and she was in actual control over the ONT's operation. McBirney also avers that, under Jackson's tenure as trustee, it was Jackson, not McBirney, who exercised control over the ONT, signed all documents and checks on behalf of the ONT, decided when and where to invest trust funds, maintained possession of all financial and tax documents pertaining to the trust, and signed the ONT's tax returns. McBirney points to Jackson's testimony that he took no compensation for his duties, he consulted independent counsel regarding his duties as trustee, and he would not have accepted the trusteeship had he thought anything about the trust was illegal or improper. Additionally, McBirney asserts that Texas law is unclear about the level of control a beneficiary may exert over a spendthrift trust before the spendthrift provision is invalidated. He posits that because Texas law is unclear, he lacked the requisite intent to commit a crime.

C

The court holds that a rational jury could have found beyond a reasonable doubt that McBirney committed each essential element of the crime of mail fraud. To satisfy the scheme element, the government was required to prove beyond a reasonable doubt that

McBirney "had a conscious knowing intent to defraud.'" *Reyes*, 239 F.3d at 736 (quoting *Krenning*, 93 F.3d at 1264).   It was not obligated to prove, for example, that the ONT documents were not facially valid, that the trust did not appear to be validly established, or that there was anything inherently unlawful about how the trust appeared to be set up.   Even a trust that appears to have been properly created can be an instrument of a scheme to defraud.   Accordingly, it is not controlling that the ONT appeared to have been validly established under Texas trust law and not to have been self-settled.   A rational jury could have found that McBirney used what seemed to be a lawfully created spendthrift trust to carry out his scheme and artifice to defraud the FDIC of its right to payment.

Moreover, the government presented sufficient evidence from which a rational jury could have found beyond a reasonable doubt that McBirney devised a scheme to defraud the FDIC and that the ONT was part of that scheme.   The evidence reasonably supports a finding that McBirney, not Nation, directed the creation of the trust.   The government presented evidence that McBirney's attorney suggested to him that he have someone set up a spendthrift trust for him and then file for bankruptcy relief.   Although Nation used one attorney to set up trusts for his family members and one person outside his family, Nation's attorney did not draft the ONT and related documents.   Rather, Stephen A. Roberts, Esquire

("Roberts"), who represented Stewart as trustee, drafted the trust documents. Roberts dealt primarily with McBirney, to a lesser extent with Stewart, and not at all with Nation. McBirney wrote Roberts several notes detailing how the trust should be set up. The relationship between McBirney and Roberts became so close that, at one point, Roberts wrote McBirney a letter explaining that he represented Stewart, not McBirney, and asking McBirney to sign an acknowledgement of that fact. There is no evidence that Roberts ever communicated with Nation prior to the execution of the trust document.

Moreover, a rational jury could have found that the trust was initially funded with McBirney's assets, which were funneled through Inter-Texas Investments, Inc. ("ITI") and Nation.[5] Although Nation transferred each of the initial trust assets to the ONT, the government presented evidence that Nation acquired at least some of these assets from ITI, a corporation that Stewart owned. ITI had initially acquired these assets at McBirney's direction. Nation conveyed each of the initial trust assets subject to promissory notes. The trust document provided that the trust was responsible for paying all gift tax, if any, otherwise

---

[5]Even if the evidence was insufficient for a rational jury to find that *every* initial trust asset was McBirney's and was funneled into the trust through ITI and Nation, it is nonetheless sufficient if the evidence was sufficient for a rational jury to find beyond a reasonable doubt that McBirney devised a scheme to conceal in the ONT even *one* of his assets from the FDIC. At a minimum, the evidence permits such a finding.

payable by Nation as a result of his transfer of assets to the ONT. James Nation, Nation's son and business partner, testified that it was Nation's practice to file gift-tax returns, even if there was no gift-tax owed. Nation did file a 1993 gift-tax return, but he did not report any gift to the ONT, despite reporting a number of other gifts. The ONT did not file a gift-tax return for 1993. Moreover, Osborne testified that Nation's net gift to the ONT was likely zero——i.e., Nation transferred assets that were valued at approximately $300,000 into the ONT and took back approximately the same amount in promissory notes. A rational jury could have found from this evidence that McBirney's own assets were hidden in ITI and that, at McBirney's direction, ITI transferred his assets to Nation, who then transferred them to the ONT subject to promissory notes for the approximate value of the assets.

Additionally, the government presented sufficient evidence for a rational jury to find that McBirney caused other assets to be transferred to the ONT after its creation, that these assets were actually McBirney's, and that McBirney hid them in the ONT in furtherance of his scheme to defraud the FDIC. For example, a rational jury could have found that the CATS belonged to McBirney and that he arranged for their transfer to the ONT. James C. Hayes, a former Senior Vice President at Sunbelt, testified that McBirney was the majority shareholder in Tangent and that he transferred his interest in Tangent to his father when he learned

he was under investigation for bank fraud. Although McBirney's father nominally owned Tangent, McBirney served as Tangent's President and continued to exercise primary control over it. Tangent owned the CATS before it transferred them to the ONT. The ONT paid nothing for them. From this evidence, a rational jury could have inferred that the CATS actually belonged to McBirney and that he caused them to be transferred to the ONT as part of a scheme to defraud the FDIC.[6]

Accordingly, the court denies McBirney's motion and supplemental motion for judgment of acquittal notwithstanding the verdict as to counts 1 through 6.

### III

### A

The court turns next to McBirney's challenge to counts 7 through 15, which charged McBirney with violating 18 U.S.C. § 1001(a) by making false statements on nine of his Reports by stating on each Report that his income was below its actual value. To convict him under this statute, the government was required to

---

[6]The CATS are but one example of later assets that a rational jury could have found McBirney caused to be transferred to the ONT to defraud the FDIC. Other assets included a condominium in Padre Island, Texas; the home at 6281 Raintree Court in Dallas, which was McBirney's residence; two limousines; and McBirney's interest in 544 JV. The court need not set out in detail how these assets were actually McBirney's and how he caused them to be transferred to the ONT for no value. It is sufficient that a rational jury could reasonably have found that the government proved this as to either one initial asset or one later asset.

prove beyond a reasonable doubt (1) the making of a statement, (2) the falsity of such statement, (3) knowledge of the falsity of such statement, (4) relevance of such statement to the functioning of a federal department or agency, and (5) that the false statement was material. *See United States v. Kosth*, 257 F.3d 712, 718 (7th Cir. 2001); *United States v. Gahagan*, 881 F.2d 1380, 1382 (6th Cir. 1989) (citing *United States v. Aarons*, 718 F.2d 188, 190 (6th Cir. 1983) (per curiam)); *United States v. Godwin*, 566 F.2d 975, 976 (5th Cir. 1978) (per curiam).

McBirney challenges these convictions only on the basis that the government failed to establish the second element of this offense beyond a reasonable doubt: that his statements about his income were not true. He posits that although the ONT received income during the relevant periods, the trust's income was not his.[7] He relies again on Texas trust law in asserting that the ONT was valid. D. Supp. Mot. for Judg. Acquittal 21 (citing Tex. Prop. Code Ann. §§ 113.001-.028 (Vernon 1995 & Supp. 2006)). Specifically, he points to Jackson's testimony that the ONT income on which the government premises counts 7 through 12 and 14 is attributable to the ONT and not to McBirney. He also directs the court to Jackson's testimony that a check written on behalf of the ONT to McBirney underlying count 13 probably reflected a

_____

[7]McBirney does not dispute that the ONT received income that he did not include in the Reports as his own income.

- 15 -

distribution from ONT to McBirney rather than the payment of a fee. He urges that under the Internal Revenue Code ("IRC"), this check was a "gift" and not income. *Id.* at 19 (citing 28 U.S.C. §§ 652(a), 662(a)). Accordingly, McBirney maintains that the government failed to prove that the nine statements he made about his income on the Reports were false.

B

Essentially, McBirney relies on arguments already made and rejected: that the ONT was valid, that its income was not reportable by McBirney, and therefore that he must be acquitted of counts 7 through 15. *See id.* at 20 ("If the Government's theory as to the validity of the ONT from its inception is incorrect . . . , then these false statement counts must fall . . . ."). This argument lacks merit.

As discussed *supra* at § II(C), a rational jury could have found beyond a reasonable doubt that the ONT was part of a scheme to defraud the FDIC of payments McBirney owed it under the criminal restitution order and the civil judgment. Because a rational jury could have found that the ONT was merely an artifice to perpetrate McBirney's scheme to fraud, it likewise could have found that the income of the ONT was McBirney's. Therefore, a rational jury could have found that McBirney's statements to the Probation Office about his income——which did not include the ONT income——were false. *See also United States v. Inserra*, 34 F.3d 83, 86, 88 (2d Cir. 1994)

- 16 -

(affirming conviction of defendant who made false statements on supervision reports to Probation Office and indicated he neither owned nor drove any vehicles when he in fact owned and drove sports car valued at more than fine he owed government).[8]

C

The court next considers count 13 and McBirney's contention that the government's evidence that he had more income in February 2000 than he reported did not constitute proof of income. McBirney does not dispute that on February 8, 2000 he endorsed and deposited a check for $15,000 from the ONT. He posits that under federal tax law, this money was a gift. Accordingly, he maintains that his statement on the March 10, 2000 Report that he had no income for February 2000 was not false.

As a threshold matter, the court rejects McBirney's reliance on the IRC. Under § 1001(a), the jury need only have found beyond a reasonable doubt that his statement on the Report to the Probation Office—that he had no income—was false. McBirney

───────────────

[8]McBirney also argues that a check dated January 6, 2000 from the ONT to him for $15,000 was a gift rather than income. He maintains that because the check was not his income, he did not falsely overstate his January 2000 income by $15,000 on the March 10, 2000 Report, as alleged in count 13. He also argues that the government failed to give him credit for this check, since it was found in the probation files. The court need not consider either of these contentions. A rational jury could have found beyond a reasonable doubt from other government evidence that McBirney falsely stated his income as $12,850 on his March 10, 2000 Report. Specifically, it proffered evidence that a check for $60,000 was deposited into the ONT account in January 2000.

- 17 -

points to no authority that holds that the IRC controls the meaning of the term "income" on the Report.

Nevertheless, viewing the evidence in the light most favorable to the government, the court holds that a rational jury could not have found beyond a reasonable doubt that McBirney's statement was false. As discussed *supra* at § II(C), in convicting McBirney of mail fraud, the jury necessarily found that the ONT was used as part of a scheme to defraud the government. Likewise, in finding him guilty of making false statements about his income on the Reports, the jury necessarily found that the ONT's income was McBirney's. *See supra* § III(B). But evidence that McBirney transferred that income to himself is not proof that he had income. A rational jury could not have found beyond a reasonable doubt that McBirney's transferring his money from the ONT to himself resulted in income to him. The government's theory was that the income of the ONT already belonged to McBirney. Therefore, because the government failed to prove that McBirney (or the ONT) received income during February 2000, a rational jury could not have found beyond a reasonable doubt, based only on the transfer of money from the ONT to McBirney, that he lied when he stated on his March 10, 2000 Report that his income was $0 for February 2000. The court therefore grants McBirney's motion and supplemental motion for a judgment of acquittal as to count 13.

In sum, the court denies McBirney's motion and supplemental

motion for judgment of acquittal as to counts 7 through 12 and 14 and grants it as to count 13.

## IV

McBirney next challenges the verdict as to counts 16 through 24, in which he was convicted of concealing assets from the FDIC, in violation of 18 U.S.C. § 1032(1).  Section 1032(1) makes it a crime to

> knowingly conceal[ ] or endeavor[ ] to conceal
> an asset or property from the Federal Deposit
> Insurance Corporation, acting as conservator
> or receiver or in the Corporation's corporate
> capacity with respect to any asset acquired or
> liability assumed by the Corporation under
> section 11, 12, or 13 of the Federal Deposit
> Insurance Act.

The indictment charged that McBirney violated § 1032(1) by knowingly submitting to the Probation Office nine separate Reports on which he falsely represented his monthly income.  McBirney moves both for arrest of judgment and for judgment of acquittal as to these counts.

## A

The court first considers McBirney's motion for arrest of judgment.

## 1

"Upon the defendant's motion, the court must arrest judgment if the indictment does not charge an offense." *United States v. Parasiris*, 85 Fed. Appx. 380, 381 (5th Cir. 2004) (per curiam) (unpublished opinion) (citing Fed. R. Crim. P. 34).  An indictment

- 19 -

adequately charges an offense if it "(1) enumerates each prima facie element of the charged offense, (2) notifies the defendant of the charges filed against him, and (3) provides the defendant with a double jeopardy defense against future prosecutions." *Id.* (quoting *United States v. Nevers*, 7 F.3d 59, 62 (5th Cir. 1993)).

The indictment satisfies these requirements. It enumerates each prima facie element of the offense of concealment of assets from the FDIC by alleging that McBirney knowingly concealed and endeavored to conceal assets and property from the FDIC, as receiver for Sunbelt. And it notifies McBirney of the charges against him because it "describe[s] the specific facts and circumstances surrounding the offense in question in such a manner as to inform [McBirney] of the particular offense charged." *Nevers*, 7 F.3d at 63 (citing *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)). The indictment alleges that McBirney knowingly submitted monthly Reports to the Probation Office on which he reported that his income was materially less than it actually was, and for each monthly report at issue it sets forth the date of the report, the amount of income McBirney stated on the report, and the amount of income he allegedly concealed.

2

McBirney maintains that counts 16 through 24 do not state an offense because he had no legal duty to report his income to the FDIC. He asserts that the civil judgment required him only to *pay*

the FDIC certain amounts based on his gross income, not to *report* his income to the FDIC.  McBirney argues that, without a legal duty to report his income to the FDIC, there could be no criminal liability for concealing his income.

Although McBirney makes this argument in the context of his motion for arrest of judgment, it is more appropriately considered as a ground for his motion for judgment of acquittal.  He essentially contends that § 1032(1) requires a duty to disclose to the FDIC but that the government did not present sufficient evidence to support a finding that he owed such a duty.  Any question regarding the sufficiency of the evidence, however, is determined within the context of a motion for judgment of acquittal, and the court will therefore address it below.

Because counts 16 through 24 adequately charge the offense of concealment of assets from the FDIC, in violation of § 1032(1), McBirney's motion for arrest of judgment is denied.

B

The court next considers McBirney's motion for judgment of acquittal.

1

As noted, McBirney argues that he cannot be convicted under § 1032 because he did not owe a disclosure duty to the FDIC.  "Under 18 U.S.C. § 1032, [however,] it is a crime to 'knowingly conceal[ ] or endeavor[ ] to conceal an asset or property from the

Federal Deposit Insurance Corporation, acting as conservator or receiver or in the Corporation's corporate capacity with respect to any asset acquired or liability assumed by the Corporation[.]'" *United States v. Willey*, 57 F.3d 1374, 1380 (5th Cir. 1995) (quoting 18 U.S.C. § 1032(1)).  Section 1032(1) thus determines criminal culpability according to whether a defendant knowingly concealed or endeavored to conceal an asset or property from the FDIC with respect to any asset it acquires or liability it assumes when, *inter alia*, acting as receiver.  The statute does not merely encompass a failure to disclose an asset or property that the defendant had a duty to disclose but instead criminalizes the affirmative act of knowingly concealing or endeavoring to conceal the asset or property.

McBirney's reliance on *United States v. Seitz*, 952 F. Supp. 229 (E.D. Penn. 1997), is thus misplaced.  In *Seitz* the grand jury charged the defendant with concealing assets from the Resolution Trust Corporation ("RTC"), in violation of § 1032, the same statute that counts 16 through 24 alleged that McBirney violated.  *See id.* at 232-33.  The concealment charge was based on the defendant's failure to report to the RTC certain settlements and escrow accounts.  *See id.* at 231-32.  *Seitz* held that, "[a]t a minimum, . . . in order for the [g]overnment to hold Seitz responsible under 18 U.S.C. § 1032 of knowingly concealing an asset or property from the RTC, Seitz must have had a legally-cognizable duty to the RTC

to make the existence of the asset or property concealment known." *Id.* at 235. The court reasoned that "[m]ere silence in the absence of a duty to speak . . . cannot suffice to prove fraudulent concealment." *Id.* at 233 (emphasis omitted) (quoting *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. Ct. 1992)). Because the defendant simply remained silent about the property and had no duty to report it to the RTC, the court dismissed the concealment charge. *See id.* at 236-37. The defendant in *Seitz* did nothing more than remain silent, and the court relied on mere silence in the absence of a duty to speak to hold that the defendant could not have been guilty of violating § 1032.

In McBirney's case, however, a rational jury could have found beyond a reasonable doubt that he knowingly made affirmative misrepresentations regarding his income for the purpose of concealing or endeavoring to conceal his assets or property from the FDIC. That is, he did not merely remain silent in the absence of a duty to speak; instead, through affirmative submissions to the Probation Office, he knowingly concealed or endeavored to conceal his income by underreporting it.

2

McBirney next contends there is no evidence that he knew that what he reported on his monthly Reports would be conveyed by the Probation Office to the FDIC. In essence, McBirney challenges the jury's implicit finding that he *knowingly* concealed from the FDIC.

- 23 -

But the evidence does support the rational inference that McBirney underreported his income to the Probation Office, knowing or intending that it would result in restitution payments to the FDIC in amounts smaller than he was actually obligated to make, thus concealing or endeavoring to conceal his assets from the FDIC.  For example, the evidence supports the finding that McBirney knew he was required to report his income to the Probation Office and was aware that one purpose of this reporting requirement was to determine whether he was adequately paying restitution to the FDIC. The amount McBirney was required to pay the FDIC to satisfy his restitution obligations was tied to his income.[9]  A rational inference from this evidence is that McBirney knowingly understated his income on the monthly Reports so as to justify making smaller restitution payments to the FDIC, and thus that he knowingly concealed or endeavored to conceal his assets from the FDIC.

3

McBirney's remaining arguments are that he was not obligated to report the ONT income as his own and that there was no concealment from the government.  The court addressed these arguments *supra* at § III with respect to counts 7 through 15.  The

_____

[9]The settlement agreement in McBirney's civil case required him to pay his judgment according to the following schedule: 10% of the first $100,000 of annual gross income, 25% of marginal annual gross income between $100,000 and $250,000, 40% of marginal annual gross income between $250,000 and $500,000, and 50% of marginal annual gross income in excess of $500,000.  *See* G. Ex. 14 at 5-6.

monthly Reports that are the basis for counts 7 through 15 are the same as those for counts 16 through 24, respectively.  The court rejected the arguments with respect to counts 7 through 12, 14, and 15 and for the same reasons it does so as to counts 16 through 21, 23, and 24.  But concerning count 13, the court held that there was insufficient evidence to find that McBirney made a false statement. By accurately reporting his income on the Report that is the basis for counts 13 and 22, McBirney likewise could not have violated § 1032(1).

Accordingly, the court denies McBirney's motion and supplemental motion for judgment of acquittal as to counts 16 through 21, 23, and 24, and it grants the motion with respect to count 22.

V

The court now considers McBirney's contention that a reasonable jury could not have found him guilty beyond a reasonable doubt of counts 25 and 26.  Counts 25 and 26 charged McBirney with making false statements, in violation of 18 U.S.C. § 1001(a).

A

In count 25, the government alleged that McBirney made a false statement when, in submitting a personal financial statement to the Probation Office, he answered the question, "Do you receive, or under any circumstances expect to receive benefits, from any established trust . . .?  If so explain."  McBirney responded: "No,

to the Best of my knowledge & belief."

McBirney first contends that, because the question was compound, it was ambiguous.  He points to the testimony of United States Probation Officer Sharon Geider ("Officer Geider"), one of his probation officers, as evidence that the question was ambiguous.  She testified that she interpreted it as asking only whether McBirney expected to receive benefits.  He also argues that his answers were truthful because, under the provisions of a spendthrift trust, he could not have expected to receive benefits from the ONT until the trustee distributed them.  He reasons that as to the first part of the question——do you receive benefits——his answer was truthful because he could not have anticipated future benefits and the question did not ask whether he had received benefits in the past.  As to the second part of the question——whether he expected to receive benefits——he contends his response was literally true under Texas trust law.  He argues that his conviction cannot stand where his response was not false.

"[A] prosecution for a false statement under § 1001 or under the perjury statutes cannot be based on an ambiguous question where the response may be literally and factually correct . . . .  An indictment premised on a statement which on its face is not false cannot survive."  *United States v. Moses*, 94 F.3d 182, 189 (5th Cir. 1996) (alteration and omission in original; emphasis omitted) (citing *Gahagan*, 881 F.2d at 1383; *United States v. Vesaas*, 586

F.2d 101, 104 (8th Cir. 1978)).   The fact that the question was compound does not, however, make it ambiguous.   The question was framed in the disjunctive and, by answering "No," McBirney represented to the Probation Office both that he did not then receive benefits from any established trust and that he did not under any circumstances expect to receive benefits from any established trust.

Assuming *arguendo* that his answer to the second part of the question——that he did not under any circumstances expect to receive benefits from any established trust——was literally true, a rational jury could still have found him guilty based on his false answer to the first part of the question.   The record amply supports the finding that McBirney was receiving numerous benefits from the ONT in the form of payments that supported his daily living expenses and his lifestyle.   The court thus finds that a rational jury could have found that McBirney's statement that he did not receive benefits from the ONT was false, and it denies his motion with respect to count 25.

B

Count 26 charged McBirney with making a false statement, in violation of 18 U.S.C. § 1001(a), when, in submitting a net worth statement to the Probation Office, he stated in a section entitled "Trust Assets," "I have no control over the trust."

- 27 -

1

McBirney contends that his response was literally true because the trustees—and not he—exercised control over the ONT.  He posits that the facts that the trustee made monetary distributions to him as the beneficiary of the ONT, bought the house on Raintree for his use, purchased vehicles for his use, and paid many of his expenses are not proof that he controlled the ONT.  He points to evidence that he contends demonstrates that Stewart drained assets from the ONT for the benefit of her companies and that Jackson executed all of the documents on behalf of ONT, including tax returns.  Accordingly, he argues that the evidence establishes only that Stewart and Jackson controlled the ONT.

Viewing the evidence in the light most favorable to the government, the court concludes that a rational jury could have found beyond a reasonable doubt that McBirney controlled the ONT.  For instance, the government presented evidence that McBirney represented to Michael Lance ("Lance"), a potential business partner, that McBirney "made investments through [ONT], bought companies" and that "Dan Jackson worked for him."  Tr. 4:108.  Lance further testified that McBirney advised him that Jackson worked for McBirney and that whatever McBirney wanted him to sign, Jackson signed.  Tr. 4:111.  A rational jury could have found from this evidence that McBirney controlled the ONT and that he violated 18 U.S.C. § 1001(a) when he stated that he did not control the ONT.

2

McBirney next argues that "a question concerning 'control' (a term that has not even been defined) over a spendthrift trust is not a question to a material matter in the area of trust law which should rise to the level of criminal culpability." D. Supp. Mot. for Judg. Acquittal 27. That is, it is not clear under Texas law that an individual's control over a spendthrift trust is relevant in determining whether the trust is valid. *Id.* (citing *In re Pratt*, 411 F.3d 561 (5th Cir. 2005); *In re Shurley*, 115 F.3d 333 (5th Cir. 1997)). Accordingly, he urges that the statement that he had no control over the trust cannot be material to the government's determination of whether he was falsifying his income. In other words, the statement about control is merely extraneous, because it is not relevant to a determination of the trust's validity.

McBirney's argument is misplaced. To be material under 18 U.S.C. § 1001(a), a statement need only be capable of influencing a reasonable investigator or decisionmaker. See *United States v. Gaudin*, 515 U.S. 506, 509 (1995). Whether the statement is material to a determination of the validity of the ONT under state law is beside the point. A rational jury could have found that McBirney's statement that he did not have control over the ONT was capable of leading the Probation Officer away from the ONT. In other words, a rational jury could have found that McBirney's

statement was capable of misleading the Probation Officer by directing her away from his relationship with the ONT. *See United States v. Stewart*, 433 F.3d 273, 318 (2d Cir. 2006) (holding that statement that "was capable of distracting government investigators' attention away from" third person involved in fraud "may be considered material"); *United States v. McBane*, 433 F.3d 344, 351 (3d Cir. 2005) ("[S]tandard require[s] only that the false statement at issue be of a type capable of influencing a reasonable decisionmaker." (emphasis omitted)).  The court concludes that a rational jury could have found beyond a reasonable doubt that McBirney's statement that he had no control over the trust was "material" within the meaning of 18 U.S.C. § 1001(a).

The court thus denies his motion with respect to counts 25 and 26.

VI

McBirney challenges the verdict on count 27, which charged him with money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).  It also charged McBirney with committing this offense as an aider and abettor, under 18 U.S.C. § 2.

A

Section 1956(a)(1)(B)(i) makes it a crime,

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[ ] or attempt[ ] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . .

> knowing that the transaction is designed in
> whole or in part . . . to conceal or disguise
> the nature, the location, the source, the
> ownership, or the control of the proceeds of
> specified unlawful activity . . . .

To prove McBirney guilty of money laundering under § 1956(a)(1)(B)(i), the government was required to prove beyond a reasonable doubt that he (1) conducted or attempted to conduct a financial transaction, (2) knowing that the property involved in the transaction was the proceeds of unlawful activity, (3) with the intent to conceal or disguise the nature, location, source, ownership, or control of the proceeds of unlawful activity. *See Willey*, 57 F.3d at 1383; *United States v. Garza*, 42 F.3d 251, 253 (5th Cir. 1994) (quoting *United States v. West*, 22 F.3d 586, 590-91 (5th Cir. 1994)). "To prove that a defendant aided and abetted money laundering, the government must show that the defendant 'associated himself with the unlawful financial manipulations, that he participated in them as something he wished to bring about, and that he sought, by his actions, to make the effort succeed.'" *Willey*, 57 F.3d at 1384-85 (quoting *United States v. Termini*, 992 F.2d 879, 881 (8th Cir. 1993)).

The indictment charges that McBirney knowingly caused the trustee of the ONT, in 248 financial transactions, to transfer $2,054,336.00 from the ONT bank account, by checks and other fund transfers, for the payment of McBirney's personal expenses. The indictment identifies the specified unlawful activity as

concealment of assets from the FDIC, in violation of § 1032(1).

McBirney contends he is entitled to be acquitted of this count because (1) since the money laundering count is based on the concealment counts, the money laundering count must fall because he had no duty to report his income to the FDIC; (2) there is insufficient evidence to support the money laundering count because there is insufficient evidence to support the concealment counts; (3) there is insufficient evidence that the transactions underlying the count were designed to conceal and disguise the source, ownership, and control of the proceeds; (4) there is insufficient evidence that he knowingly caused Jackson to write each and every one of the 248 checks that are the basis of the count; and (5) there is insufficient evidence that each of the 248 transactions was performed for his personal expenses, as the indictment alleges. The court has already rejected *supra* at § IV the grounds on which McBirney's first two arguments are premised and has upheld the verdict on all but one concealment count.  The court therefore will not address these arguments.

B

McBirney maintains generally that there is insufficient evidence to support the design element, i.e., that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the unlawful activity.  He maintains that all proceeds that went into the bank

account and all checks and other transfers from the account were identified as ONT proceeds and that the account did not in any way attempt to disguise or conceal the nature of the funds, their source, or what they were being used for.

McBirney's argument presupposes that the ONT was a valid trust and that its assets were separate from McBirney's. *See* D. Supp. Mot. for Judg. Acquittal 28 ("If the ONT was a valid Texas spendthrift trust, or, if there is a reasonable doubt thereof, this count must fall as well."). But the government's theory, which is supported by sufficient evidence, is that McBirney set up the ONT as an artifice to conceal his assets from the FDIC. The jury agreed with this theory, implicitly finding that the trust assets were actually McBirney's and that the trust was merely an artifice to perpetrate a fraud on the FDIC.

Using a third-party entity such as the ONT "to purchase goods on one's behalf or from which one will benefit usually constitutes sufficient proof of a design to conceal." *Willey*, 57 F.3d at 1385. By using trust assets to pay for his personal expenses, McBirney "not only create[d] the false impression that the [trust] was his source of wealth, but it create[d] documentary evidence in support of that deception that could mislead an investigator." *Id.* (quoting *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1476-77 (10th Cir. 1994)). Moreover, because the jury implicitly found that McBirney placed his assets in the trust with the intent to

conceal them from the FDIC, it was entitled to impute this intent to the design element of the money laundering count. *Id.* at 1385 ("[A] design to conceal in a particular transaction may be imputed to a subsequent transaction, although the inference may be weaker than if the concealing transaction itself were charged." (citing *Garcia-Emanuel*, 14 F.3d at 1478). Consequently, the court concludes that there was sufficient evidence for a rational jury to find that the government proved the design element beyond a reasonable doubt.

C

McBirney posits that there is insufficient evidence that he knowingly caused the ONT trustee, Jackson, to write each and every one of the 248 checks that are the basis of the money laundering count. He asserts that the bank account described in the money laundering count was the ONT's account, Jackson was the only signatory on the account, and there was insufficient evidence that McBirney caused Jackson to write or even knew Jackson was writing the specific 248 checks set out in the count.

This argument relates to the government's use of the aiding and abetting statute, § 2, to tie McBirney to the transactions Jackson performed. The government need only prove that McBirney "associated himself with the unlawful financial manipulations, that he participated in them as something he wished to bring about, and that he sought, by his actions, to make the effort succeed." *Id.*

- 34 -

at 1384-85 (quoting *Termini*, 992 F.2d at 881).   The evidence was ample for a rational jury to find that McBirney exercised control over the trust, even while Jackson served as trustee.   This is sufficient to satisfy the requirement of § 2.

Even if McBirney did not cause Jackson to perform *each* of the 248 transactions alleged in the indictment, this is not fatal to the government's case.   The grand jury could have indicted McBirney on 248 separate counts for aiding and abetting money laundering, one for each transaction alleged.   *Cf. id.* at 1384 (affirming convictions on separate money laundering counts, each count alleging different specific transaction with different particular check).   Had it done so, the government would have been required to prove McBirney's association with or control over each transaction identified in each count.   The government's choice to seek an indictment for only one count did not obligate it to prove that McBirney played a role in each of the 248 transactions set forth in the indictment.   It is sufficient that the government introduced sufficient evidence from which a rational jury could have found that McBirney aided and abetted merely one transaction, and the government met this obligation.

D

McBirney contends he is entitled to judgment of acquittal for money laundering because, although the indictment alleges that the 248 financial transactions were for the payment of his personal

expenses, there is insufficient evidence that each of the checks was written for such expenses.   He posits that Jackson dispersed hundreds of thousands of dollars from the ONT account to make investments in various entities rather than to pay for McBirney's personal expenses.   Although McBirney does not explicitly rely on the doctrine of constructive amendment of the indictment, this appears to be the basis for his argument.

McBirney's argument is without merit for two reasons.   First, there was no constructive amendment.

> An implicit or constructive amendment of the indictment . . . occurs when it permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged or permits the government to convict the defendant on a materially different theory or set of facts than that with which [he] was charged.

*United States v. Reasor*, 418 F.3d 466, 475 (5th Cir. 2005).   The destination of the funds involved in the transaction——personal expense payments versus investments——is not an essential element of the crime of money laundering.   McBirney does not urge that the transactions on which the government relied at trial are different from the ones alleged in the indictment.   Rather, he asserts that the purpose for writing some of the checks was different.   Even if this is true, there has been no constructive amendment of the indictment.

Second, assuming *arguendo* that there was a constructive amendment, McBirney's argument fails for the same reason as did his

previous one.  McBirney inherently concedes that some of the 248 transactions were for the payment of his personal expenses, and he contends merely that a majority of the checks were written for other purposes.  The government was not obligated to prove that each check was written for McBirney's personal expenses.  That is, even if under the constructive amendment doctrine the government was required to prove that the transactions were made for McBirney's personal expenses, as alleged in the indictment, it is sufficient that the government met this burden with respect to at least one of the 248 transactions because the indictment includes only one money laundering count.  Since the government introduced evidence from which a rational jury could have found beyond a reasonable doubt that some of the checks were written for McBirney's personal expenses, this argument fails.

Accordingly, the court denies McBirney's motion for judgment of acquittal on count 27.

VII

McBirney contends generally that he relied on instructions from Probation Officers in "how and what to make" in restitution payments.  D. Supp. Mot. for Judg. Acquittal 29.  He argues that the Probation Office has authority to collect restitution in any manner.  And he alleges that, beginning in January 1999, he was directed to pay $500 per month toward his restitution order, which he did.  When Officer Geider became McBirney's Probation Officer,

she instructed him to pay $13,000 to make up for amounts she determined were owed, and he complied. Accordingly, he asserts that he should not be prosecuted for actions relating to the payments of restitution because at all times he followed the instructions of the Probation Officer regarding payment amounts. *Id.* at 30-31 (citing *Cox v. Louisiana*, 379 U.S. 559, 571 (1965) (holding Due Process Clause does not permit conviction for "exercising a privilege which the State had clearly told him was available to him") (internal quotation marks omitted); *Raley v. Ohio*, 360 U.S. 423, 426 (1959) (holding that Due Process Clause prevented conviction of persons for refusing to answer questions of state investigating commission when they relied upon assurances of commission, either express or implied, that they had privilege under state law to refuse to answer, though in fact this privilege was not available to them)).[10]

First, even if McBirney complied with the Probation Officer's instructions, he fails to identify which counts must be dismissed on this ground. In the same vein, he does not specify which elements of the crimes this argument negates. McBirney has not demonstrated that any of the counts lack sufficient evidence.

Second, a rational inference from the evidence is that McBirney's falsifications on the various Reports he made to the

---

[10]Although McBirney cites cases that consider the Due Process Clause, he does not contend that his convictions were obtained in violation of his due process rights.

- 38 -

Probation Office led to the Probation Officers' instructions. That is, by informing the Probation Officer that he had no income, she in turn required only a minimum restitution payment. He now seeks to hide behind the false statements by arguing that he was simply "following instructions." A rational jury could have found, however, that the Probation Officer would have required that he make greater restitution payments had he not concealed his assets from her in the first instance. Accordingly, the court concludes that this argument is without merit.

## VIII

McBirney moves in the alternative for a new trial. On a defendant's motion, "[a] court may grant a new trial if it is required in the interests of justice." *United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005) (citing Rule 33(a)). Whether to grant a new trial is a matter within the district court's discretion. *See United States v. Martin*, 431 F.3d 846, 850 (5th Cir. 2005). The court "may weigh the evidence and assess the credibility of the witnesses in considering the motion." *Arnold*, 416 F.3d at 360 (citing *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997)). "Although a district court has broad discretion, it is not limitless, and it 'may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.'" *Id.* (quoting *Robertson*, 110 F.3d at 1118). "The evidence must preponderate heavily against

the verdict, such that it would be a miscarriage of justice to let the verdict stand." *Id.* (quoting *Robertson*, 110 F.3d at 1118).

Apart from stating the standard for a new trial motion, McBirney does not set forth any specific arguments for granting a new trial. The court concludes that the evidence does not preponderate against the verdict, and, accordingly, it denies McBirney's motion and supplemental motion for a new trial.

* * *

For the reasons stated, the court denies McBirney's February 3, 2006 motion for arrest of judgment, February 3, 2006 motion for judgment of acquittal notwithstanding the verdict or in the alternative motion for new trial, May 4, 2006 supplemental motion for judgment of acquittal notwithstanding the verdict or in the alternative motion for new trial, and May 4, 2006 supplemental motion for arrest of judgment, except that the court grants his February 3, 2006 motion for judgment of acquittal notwithstanding the verdict and May 4, 2006 supplemental motion for judgment of acquittal notwithstanding the verdict as to counts 13 and 22.

**SO ORDERED.**

August 21, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 40 -